The defendant appeals from her conviction, after a jury trial, of violating a harassment prevention order (HPO). G. L. c. 258E, § 9. She argues that there was insufficient evidence that she engaged in any harassment in violation of the HPO. We agree, and we therefore reverse the conviction, without reaching any of the numerous other issues she raises.
Background. Viewing the evidence in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), the jury could have found the following facts. The defendant lived next door to a man whom we shall identify by his initials, P.C., and P.C.'s two minor children. In December, 2014, P.C. obtained a HPO requiring that the defendant not abuse or harass him and that the defendant remain away from P.C.'s apartment. The HPO did not include a "no contact" provision.
In January, 2015, P.C. became aware of a video posted on YouTube in which the defendant spoke to the camera about a conflict between herself and P.C., involving his children. The defendant suggested that the conflict had led P.C. to file false charges against her that would require a trial.[2] The defendant stated that she had "had to contact ... DSS," a reference to the Department of Social Services, now known as the Department of Children and Families (DCF).[3] About a week after P.C. learned of the video, someone from DCF contacted him to say that DCF had received a report that he was abusing and neglecting his children.
P.C. contacted local police to complain about the video. The police applied for and obtained issuance of a complaint charging the defendant with violating the HPO. At trial, the defendant admitted to having posted the video and calling DCF about P.C.'s treatment of his children, but she argued that the HPO could not prevent her from engaging in free speech. The jury returned a verdict of guilty.
Discussion. The defendant argues that the type of speech-based "harassment" that may be prohibited and punished under c. 258E is limited to two categories: "fighting words" and "true threats."[4] She asserts that there was insufficient evidence that her statements in the video or her call to DCF fell into either category. We agree.
"The definition of 'harassment' in c. 258E was crafted by the Legislature to 'exclude constitutionally protected speech,' ... and to limit the categories of constitutionally unprotected speech that may qualify as 'harassment' to two: 'fighting words' and 'true threats.' " Van Liew v. Stansfield, 474 Mass. 31, 37 (2016), quoting O'Brien v. Borowski, 461 Mass. 415, 425 (2012). Therefore, regardless of whether the defendant's speech constituted intimidation, it could not come within the c. 258E definition of "harassment" unless it satisfied the definition of either "fighting words" or "true threats." The jury heard no evidence that the defendant's speech met either definition.
"To qualify as 'fighting words,' the words 'must be a direct personal insult addressed to a person, and they must be inherently likely to provoke violence.' " Id., quoting O'Brien, 461 Mass. at 423. "Fighting words" are "limited to 'face to face personal insult[s].' " C.E.R. v. P.C., 91 Mass. App. Ct. 124, 130 n.12 (2017), quoting Commonwealth v. Welch, 444 Mass. 80, 98-99 (2005), abrogated on another ground by O'Brien, 461 Mass. at 425 & n.7. Here, there was no evidence permitting the jury to find that the video or the complaint to DCF included any such insults.
"As for 'true threats,' these include 'direct threats of imminent physical harm,' as well as 'words or actions that -- taking into account the context in which they arise -- cause the victim to fear such [imminent physical] harm now or in the future.' " Van Liew, 474 Mass. at 37, quoting O'Brien, 461 Mass. at 425. "And fear is narrowly defined as fear of physical harm or fear of physical damage to property; it must be more than 'a fear of economic loss, of unfavorable publicity, or of defeat at the ballot box." Id. at 37-38, quoting O'Brien, 461 Mass. at 427. Here, there was no evidence permitting the jury to find that the video or the complaint to DCF threatened, or caused P.C. to fear, any physical harm or physical damage to property at any time.
The Commonwealth appears to contend that the defendant's speech, even if not "fighting words" or "true threats," constituted "intimidation" and therefore satisfied the c. 258E definition of "harassment." The Commonwealth argues that the jury could have found that the defendant's speech was intended to intimidate P.C. by putting him in fear of DCF intervention in his relationship with his children, in order to deter him from pursuing the charges he had filed against her. This misses the point of Van Liew: even if speech is intimidating and constitutionally unprotected, it is not necessarily "harassment" under c. 258E. Rather, the Legislature has "limit[ed] the categories of constitutionally unprotected speech that may qualify as 'harassment' to two: 'fighting words' and 'true threats.' " Van Liew, 474 Mass. at 37. See A.R. v. L.C., 93 Mass. App. Ct. 758, 760 (2018).
The Commonwealth also argues that the defendant's violation consisted of "falsely reporting [P.C.] to DCF." But here there was no evidence that whatever the defendant reported to DCF (and there was no testimony as to her exact words) was actually false. The most the jury heard on this issue was that P.C. retained full custody of his children.
For those reasons, there was insufficient evidence of "harassment" to support the conviction.
Judgment reversed.
Verdict set aside.
Judgment for the defendant.

The jury were not informed of the nature of the charges.

At trial the department was referred to variously as DSS and DCF. For clarity, we will use only the acronym DCF.

The statute defines "harassment" in relevant part to mean "[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property." G. L. c. 258E, § 1.